

FILED

OCT 3 1 2007

CLERK

# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

## CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 07-30063 |
| | * | |
| Plaintiff, | * | |
| | * | REPORT AND RECOMMENDATIONS |
| -vs- | * | FOR DISPOSITION OF MOTION TO |
| | *SUPPRESS STATEMENTS AND EVIDENCE | |
| HOWARD D. KILLEANEY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant, Howard D. Killeaney, has filed a Motion to Suppress Statements and Evidence. Docket No. 14. In his Motion, he seeks to suppress, on Fourth Amendment grounds, the March 7, 2007 search of a rental house he lived in and the subsequent seizure of physical evidence obtained therefrom. Defendant also seeks to suppress from use at trial his July 3, 2007 statements to an FBI agent, contending that such statements were made after an invalid waiver of his Miranda rights, that the statements were not voluntary and that they were elicited in violation of his Fifth and Sixth Amendment rights. Plaintiff, United States of America (Government), has filed a Response to the Motion resisting the same. Docket No. 22. A hearing was held to address the Motion on October 19, 2007 at which seven witnesses testified and nine exhibits were received into evidence. Because the Motion is a dispositive one, this Court is only authorized to determine the same on a report and recommendation basis. See 28 U.S.C. §636(b)(1). Having carefully considered the matter, in light of the evidence and testimony presented, the Court submits this report containing its findings of fact and recommendations concerning disposition of the Motion.

I.

From February 15, 2007, to March 7, 2007, Defendant lived in Michaelyn Black Lance's rental home, House Number 187, in the Soldier Creek community on the Rosebud Sioux Tribe Indian Reservation. Black Lance's 4- and 5-year-old sons also lived in the residence, one of whom, D.B., is the alleged victim in this case. At some point in time after moving in, Defendant began baby-sitting Black Lance's boys while she attended college classes at Sinte Gleska University.

On March 7, 2007, Black Lance called the Rosebud Sioux tribal police and reported that Defendant had sexually assaulted D.B. Daniel Kettell, an officer with the tribal police, responded to the call and knocked on the front door to the residence upon arrival. Black Lance answered the door, let Kettell in and escorted him to where the boys and Defendant were. After a short conversation with D.B., Kettell talked to Defendant then handcuffed and removed him from the home. Kettell subsequently reentered the residence through the open front door, looked around inside and, while with Black Lance, saw a tissue with feces on it in an upstairs bathroom trash can. According to Black Lance, such a tissue had not been in the trash can when she left for school earlier in the day. Kettell did not seize the tissue, or take possession of any physical evidence in the home at that time. Instead, he departed the residence and proceeded to transport Defendant to the tribal jail. There, Defendant was booked in for the tribal offense of sexual contact with a minor.

On March 8, 2007, and while in tribal custody, Defendant was interviewed by FBI Agent Brian Carroll and Rosebud Sioux Tribal Police Chief Charles Red Crow about the sexual abuse allegations involving D.B. Defendant denied having done anything "perverted"

2

to D.B. and refused to provide a taped summary or written statement at the end of the interview.

That same day, Kettell received a call from Red Crow requesting that Kettell pick up certain evidence at Black Lance's house. Black Lance had earlier contacted the tribal police department and reported that, while cleaning the house, she found additional tissues in the same bathroom trash can that had dried blood on them. Because Kettell was busy on other matters, he requested fellow Officer Frank Iron Heart to travel to and collect the tissues from Black Lance, which Iron Heart did. The tissues were subsequently brought to the police department.

On March 9, 2007, Defendant appeared in Rosebud Sioux tribal court with appointed tribal counsel, Oliver J. Semans, of the Rosebud Sioux Public Defender's Office. At that time, Defendant pled not guilty to the sexual contact charge, bond was set (at $2,500 cash) and a pretrial conference scheduled for June 4, 2007.

Semans thereafter sought to have Defendant's bond modified. On March 22, 2007, Semans appeared in tribal court, with Defendant, and orally moved for a modification of bond, which the tribal court denied. During the court hearing, Defendant again entered a not guilty plea to the tribal charge.

On June 4, 2007, Defendant made another tribal court appearance with Semans, pled not guilty (for the third time), and a jury trial was scheduled for October 23, 2007. Given Defendant's pretrial detainee status and the potential for him remaining in jail another four-and-a-half months pending trial, Semans requested and succeeded in persuading the tribal

court to modify Defendant's bond so that Defendant could immediately be released from custody.

Defendant was interviewed again by Carroll on July 3, 2007. Defendant had been arrested for an alleged state parole violation and was, at the time, being detained at the Hughes County Jail in Pierre, South Dakota. Prior to the commencement of the interview, Carroll contacted the tribal police department and inquired whether Defendant had made any appearances in tribal court and whether he was represented by anyone. Carroll then spoke to an Assistant United States Attorney about interviewing Defendant a second time, Semans not being a licensed attorney and a "Red Bird" concern. Following this conversation, Carroll met with Defendant at the county jail.

Carroll began by informing Defendant of his rights from an Advice of Rights form. Defendant agreed to talk to Carroll and signed the form, acknowledging that he understood his rights and declaring that he was willing to waive them and answer questions without a lawyer present. During the interview, Defendant made inculpatory statements, admitting that he had digitally penetrated D.B.'s anus the night of March 6, 2007. Defendant also provided a taped summary statement at the end of the interview after again being advised of his rights and waiving them.

On July 25, 2007, a two-count federal Indictment was filed, charging Defendant with aggravated sexual abuse of D.B. in violation of 18 U.S.C. §§1153, 2241(c), 2246(2)(C) and 2246(2)(D). Defendant has pled not guilty to the charges and a jury trial is scheduled to begin on November 27, 2007.

II.

Defendant claims that the search and seizure of the tissues, and the results of any testing done on such evidence, should be suppressed because the same was conducted without the consent of any person residing in the house and was not a lawful "search incident to arrest." He maintains that the search and seizure violated his Fourth Amendment rights and that any fruits derived therefrom should be suppressed under the Exclusionary Rule.

A.

Defendant asserts that he has "standing"[1] to contest the search of the home and the seizure of the tissues found therein. The Court agrees.

The record indicates that Defendant was an invited social guest in Black Lance's home at the time Kettell entered the residence on March 7th. Defendant's status as an extended stay over-night guest provided him with the requisite expectation of privacy that society has recognized as being reasonable. Minnesota v. Olson, 495 U.S. 91, 96-100 (1990). Indeed, all citizens share the expectation:

> [T]hat hosts will more likely than not respect the privacy interests of their guests, who are entitled to a legitimate expectation of privacy despite the fact

---

[1] Almost a decade ago, the United States Supreme Court reaffirmed its earlier rejection of "standing" nomenclature. Minnesota v. Carter, 525 U.S. 83, 87-88 (1998). Beginning in Rakas v. Illinois, 439 U.S. 128, 139-40 (1978), the Supreme Court replaced the standing inquiry with new vocabulary tailored to the principles that undergird the Fourth Amendment. United States v. Sturgis, 238 F.3d 956, 958 (8th Cir.) (citing Carter, 525 U.S. at 88), cert denied, 534 U.S. 880 (2002). In Carter, the Court stated that "a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . ."

For convenience, and to track the verbiage found in Defendant's Motion, the Court will use the "standing" term for purposes of describing Defendant's right to assert the Exclusionary Rule as a bar to evidence obtained through an alleged violation of his own Fourth Amendment rights.

that they have no legal interest in the premises and do not have the legal authority to determine who may or may not enter the household.

Olson, 495 U.S. at 99. Because Defendant's expectation of privacy in Black Lance's home was rooted in "understandings that are recognized and permitted by society, he can properly claim the protection of the Fourth Amendment and as such, has standing to object to the search and seizure at issue in this case." 495 U.S. at 100; see also United States v. Dickson, 64 F.3d 409, 410 (8th Cir. 1995) (testimony that the defendant "had been staying in the apartment in question 'for a couple of days' as a guest" alone sufficient to establish standing), cert. denied, 516 U.S. 1064 (1996); State v. Tullous, 2005 SD 5, ¶16, 692 NW2d 790, 794 (defendant had standing, as he "regularly stayed overnight" and at times baby-sat for a child in the house).

B.

While not objecting to Defendant having standing, the Government nonetheless argues that the search and seizure were lawful under the Fourth Amendment because Black Lance consented to the same. The evidence adduced, and Black Lance's own testimony, fully support this argument.

The Fourth Amendment's general prohibition against warrantless searches does not apply when an officer obtains voluntary consent from the person whose property is searched or from a third party with common authority over the property. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990); United States v. Fleck, 413 F.3d 883, 891-92 (8th Cir. 2005). The voluntariness of consent is evaluated based on the totality of the circumstances present.

6

Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973); United States v. Jimenez, 478 F.3d 929, 932 (8th Cir. 2007).

In the case at hand, the evidence clearly demonstrates that Kettell obtained voluntary consent to enter Black Lance's home, investigate the allegations of child sexual abuse and to gather evidence related thereto. Upon learning of Defendant's alleged sexual assault of D.B., Black Lance called the tribal police department and permitted Kettell to enter the home. She took Kettell to the bedroom where D.B. was waiting, and to the living room where Defendant was located. She allowed Kettell to talk to D.B. about what Defendant had supposedly done and provided information to the officer. Black Lance was the source of most, if not all, of the information supplied to Kettell. In her testimony, Black Lance unequivocally stated that she "invited" Kettell into the house and gave him permission to look around inside.

These facts, coupled with Black Lance's ownership of and authority over the residence[2], Kettell's search for and seizure of evidence was permissible under the Fourth Amendment. See United States v. Hilliard, 490 F.3d 635, 639-40 (8th Cir. 2007). Moreover, Kettell's entry into the residence and his actions while inside were reasonable. Black Lance escorted him in and accompanied him throughout the house that day. Thus, even if Black Lance lacked the authority to give consent, a prudent officer, standing in Kettell's shoes, would have reasonably believed that the consent to enter the home and conduct an investigation therein was valid. Id. (citing Rodriguez, 497 U.S. at 188-89); United States v.

---

[2]Black Lance testified that the house was only rented to her and that she alone was the lessee. Mtn. Hrg. Tr. 6, 8-9.

Janis, 387 F.3d 682, 686-87 (8th Cir. 2004). As such, the search of the residence, on March 7th, and the seizure of the tissues from it, were valid and should not be suppressed.

### III.

Defendant also seeks to exclude his July 3rd statements to Carroll, claiming that the waiver of his Miranda rights was invalid, that his statements were involuntary and that they were obtained in breach of both his Fifth and Sixth Amendment rights. This Court need not take up, and does not reach, the merits of Defendant's waiver and voluntariness claims or the substantive portion of his Fifth Amendment one because it concludes that his right to counsel, guaranteed by the Sixth Amendment, attached and was violated at the time he was interviewed by and made statements to Carroll. See United States v. Red Bird, 146 F.Supp.2d 993 (D.S.D. 2001), aff'd, 287 F.3d 709 (8th Cir. 2002).

### A.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The essence of this right is the opportunity for a defendant to consult with counsel and to have counsel investigate the case and prepare a defense for trial. Powell v. Alabama, 287 U.S. 45, 58, 71 (1932). In Massiah v. United States, 377 U.S. 201 (1964), the Supreme Court held that a defendant's Sixth Amendment right to counsel was violated when federal agents deliberately solicited incriminating statements from him, without counsel, after he had been indicted. 377 U.S. at 206. The Court, relying on Massiah, later held that, under the Sixth Amendment, "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that

8

police-initiated interrogation is invalid." Michigan v. Jackson, 475 U.S. 625, 636 (1986); see also Maine v. Moulton, 474 U.S. 159, 176 (1985) ("the Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the state . . . and is violated when the state obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent."). Massiah and Jackson thus make clear that the Sixth Amendment right to counsel attaches against the Government at the time of a defendant's federal or state court proceeding. The issue here is whether this right attached when Defendant appeared in tribal court with "lay counsel" (a tribal public defender) and was arraigned on the sexual contact charge.

B.

At the outset, there can be little doubt that the offense Carroll and tribal police had been investigating, and which Carroll alone interviewed Defendant on, was the same sex offense as Defendant had earlier been charged with and pled not guilty to in tribal court.[3] Texas v. Cobb, 532 U.S. 162, 173 (2001). Under the test enunciated in Blockberger v. United States, 284 U.S. 299, 304 (1932), Defendant's tribal and federal charges do not require proof of any substantive fact that the other does not. Compare Cobb, 532 U.S. at 173-74; see also Brown v. Ohio, 432 U.S. 161, 164-68 (1977) (joy riding and auto theft constitute the "same offense" because "it is clearly not the case that each requires proof of a fact which the other does not.") Inasmuch as the underlying facts, which provide the basis

---

[3] In his testimony, Carroll admitted that the tribal and federal charges were the same. Mtn. Hrg. Tr. 54.

for both sets of charges, are substantively identical, Defendant's Sixth Amendment right to counsel would, in accordance with established law, have attached at the time of his tribal arraignments.[4] Red Bird, 287 F.3d at 715-16; United States v. Swift Hawk, 125 F.Supp.2d 384, 386-88 (D.S.D. 2000).

The Government, however, asserts that the right to counsel was not triggered because Defendant did not appear with, and was not represented by, "counsel" under the Sixth Amendment when he was arraigned in tribal court. Semans is not a licensed attorney who is admitted to practice in state or federal courts in South Dakota. As the Chief Tribal Public Defender, however, he was admitted to practice in tribal court, at the time of Defendant's tribal arraignments[5], and was being supervised by Eric Antoine[6], a licensed attorney who worked for and was under contract with the Rosebud Sioux Tribe. Whether a tribal public defender, who is not a licensed attorney, but is authorized to practice law in tribal court and represent criminal defendants, can provide the requisite "assistance of counsel" so as to activate the protections of the Sixth Amendment, is an issue of first impression.

A South Dakota federal court has held, in a criminal case arising out of an incident on the Rosebud Indian Reservation, that a defendant's Sixth Amendment right to counsel

---

[4]Defendant was actually arraigned and pled not guilty in tribal court three times before he was interviewed by Carroll.

[5]Under the Rosebud Sioux Tribe's Law and Order Code "lay counsel" may be admitted to practice before the courts of the Tribe if he/she takes and passes a tribal bar examination, testing his/her knowledge of tribal law and professional ethics, pays an admission fee and is determined to meet the practice qualifications by the Chief Tribal Judge. See Attachment.

[6]Antoine has been licensed as an attorney in South Dakota since 1987, is a member of the Sicangu Oyate Bar (the Rosebud Tribal Bar Association) and is admitted to practice in this District, the Eighth Circuit Court of Appeals and the United States Supreme Court.

attached when he "appeared in tribal court with counsel, the tribal public defender's office, for his arraignment."[7]  Swift Hawk, 125 F.Supp.2d at 386-89; compare United States v. Whitefeather, No. Crim. 053881DWFRLE, 2006 WL 763204 at *2 (D. Minn. Mar. 24, 2006).  (unlike Red Bird and Swift Hawk, the appointment of a "lay advocate" at the defendant's tribal arraignment did not trigger the Sixth Amendment because the Red Lake Tribe's Constitution did not contain a provision for the appointment of counsel for indigent defendants, at the expense of the Tribe, similar to that of the Rosebud Sioux Tribal Constitution.); United States v. Dupris, 422 F.Supp.2d 1061, 1068-70 (D.S.D. 2006) (the defendant's Sixth Amendment right to counsel did not attach until his initial appearance in federal court  where (1) the Cheyenne River Sioux Tribal Constitution did not guarantee indigent tribal members the right to counsel in criminal cases; (2) neither the tribal public defender nor her assistant were active members, in good standing, of the tribal bar; (3) the assistant public defender did nothing more than appear with the defendant at the latter's arraignment; and (4) the interviewing FBI agent was not aware that the defendant had earlier appeared in tribal court with an assistant public defender and been arraigned).

Moreover, in dicta, this Court noted that a "lay" public defender, who was admitted to practice law in Cheyenne River Sioux tribal court, but not elsewhere, was a "lawyer" within the meaning of Miranda. United States v. Eastman, 256 F.Supp.2d 1012, 1017 n. 4 (D.S.D. 2003).[8]  In doing so, the Court observed that the public defender was in a position

---

[7]It is not clear whether the defendant's tribal public defender in Swift Hawk was a licensed attorney or "lay counsel" who was admitted to practice in Rosebud Sioux tribal court.

[8]The Court's Report and Recommendation was adopted in toto, by the District Court, the Honorable James M. Rosenbaum, Chief United States District Judge, presiding.

to provide the same type of legal assistance necessary to protect the rights of an accused, undergoing custodial interrogation, that a lawyer could offer. Id.

A federal court in North Dakota later reached the same conclusion. See United States v. Fredericks, 273 F.Supp.2d 1032, 1041 (D.N.D. 2002), aff'd, 126 Fed. Appx. 336 (8th Cir. 2005). In Fredericks, an Indian defendant was advised, in warnings similar to Miranda, that he was entitled to the appointment of a "lay advocate", as opposed to an attorney, in the event he could not afford to hire counsel. Id. The defendant thereafter sought to suppress, in his federal case, the statements he made to a tribal officer on the ground that he was not properly advised of his Fifth Amendment right to counsel in the warnings given to him. Id. The court[9] refused to suppress the defendant's statements, concluding that the warnings were an "effective equivalent" to the Miranda advisement. As aptly stated by that court:

> Although not an attorney, a lay advocate should posses enough education or knowledge by virtue of [his/her] ability to meet the tribe's licensing requirements to engage in an informed discussion with a suspect about the wisdom of speaking to law enforcement officers.

Id.

After careful review of the matter, in light of the paucity of guiding precedent, the Court believes that under the unique circumstances present, Defendant was being represented by and receiving assistance from "counsel" as contemplated by the Sixth Amendment at the time he was questioned by Carroll. In the Court's view, Semans was more than just a "lay advocate"; he was Defendant's "counsel/lawyer" or the "functional equivalent" thereof in the tribal case. Significantly, he

---

[9]The Honorable Daniel L. Hovland, Chief United States District Judge, presiding.

1.    Was admitted to practice in Rosebud Sioux tribal court sometime in the 1990's and is a member of the Sicangu Oyate Bar Association;

2.    Handled more than 2,600 adult and juvenile cases as a tribal public defender between January and September, 2007;

3.    Has tried a number of criminal cases to the tribal court and has participated in motion practice, filing and arguing motions to dismiss, to suppress and for bond reductions;

4.    Consulted with and provided representation to Defendant in the tribal sexual contact case;

5.    Was present with Defendant at all three court hearings held on the case;

6.    Made two bond modification requests for Defendant in the case and was successful on one of them; and

7.    Acted on Defendant's behalf, pleading not guilty and preserving his right to a jury trial during three court appearances.

Compare Dupris, 422 F.Supp.2d at 1069. This being the case, the rule in Red Bird applies

and Defendant's July 3rd statements to Carroll must be suppressed.[10]

### C.

The Court is certainly mindful of the Ninth Circuit's recent decision in United States

v. Charley, 396 F.3d 1074 (9th Cir. 2005). Relying on its prior holding in United States v.

---

[10]The basis for the rule and for the suppression of Defendant's statement comes from the holding in Jackson, namely: Once the Sixth Amendment right to counsel attaches, law enforcement officials are required, unless a defendant initiates communication, to deal with the defendant through counsel rather than directly, even if the defendant has waived his Fifth Amendment rights. Patterson v. Illinois, 487 U.S. 285 (1988), is not to the contrary, because in that case, the defendant had neither retained nor accepted the appointment of counsel. 487 U.S. at 290 n.3. Furthermore, even though three judges of the Supreme Court have criticized Jackson's holding, see Cobb, 532 U.S. at 174-77 (Kennedy, J. concurring), Jackson still remains the "law of the land" that this Court is obliged to follow. Thus, Defendant's waivers of his right to counsel, during the July 3rd interview with Carroll, were invalid. Red Bird, 287 F.3d at 716.

Percy, 250 F.3d 720, 725 (9th Cir.), cert. denied, 534 U.S. 1009 (2001), the Charley court had

this to say about the defendant's Sixth Amendment right to counsel claim:

> Here, Charley's Sixth Amendment right to counsel was not triggered until she had her initial appearance in federal court on January 3, 2002. That Charley was arraigned in tribal court on January 2, 2002, is irrelevant to determining whether her Sixth Amendment right to counsel attached because we have squarely held that "the Sixth Amendment right to counsel does not apply in tribal court proceedings." The district court properly denied Charley's motion to suppress her January 3, 2002 statements because . . . her Sixth Amendment right to counsel had not yet attached when she made her request for an attorney before the tribal court.

396 F.3d at 1082-83 (citation omitted). Charley, however, is distinguishable from the

situation at hand. Just as in Red Bird, the instant case involves federal and tribal authorities

working so closely together and cooperating with each other[11] to such a degree that, to ignore

Defendant's prior assertions, of his right to counsel at three tribal arraignments, deprives him

of the ability to receive assistance from counsel at one of the most critical stages of the

proceedings against him. Red Bird, 287 F.3d at 714. The court in Charley, however,

specifically noted that this same "collusive behavior" was absent in its case. Charley, 396

F.3d at 1082 n.6;[12] see also Chavez v. Weber, 497 F.3d 796, 804 (8th Cir. 2007) (in contrast

---

[11]The tribal and federal cases, and the charges lodged against Defendant in them, are "inextricably intertwined." Red Bird, 287 F.3d at 715; Swift Hawk, 125 F. Supp.2d at 387. The two sovereigns cooperated and "worked in tandem" in connection with the investigation and charging of Defendant. Red Bird, 146 F.Supp.2d at 995; Swift Hawk, 125 F.Supp.2d at 388. Defendant's case in tribal court inherently led to his prosecution in federal court. Red Bird, 287 F.3d at 714. And, federal and tribal authorities each have evidence, important to both cases, currently in their possession.

[12]In Red Bird, the District Court also found that Percy, cited in Charley, was not represented by counsel at his tribal arraignment, that tribal law did not require that counsel be appointed for him at this proceeding and that he did not retain private counsel. 146 F.Supp.2d at 997; see also Percy, 250 F.3d at 724.

to the "close working relationship" between sovereigns found in Red Bird, the evidence in this case shows ordinary cooperation between state and federal prosecutors); United States v. Coker, 433 F.3d 39, 47 (1st Cir. 2005) (differentiating between state and federal investigations and tribal and federal investigations and pointing out that, unlike Red Bird, there was no evidence that the two sovereigns consistently worked together in investigations); see also Whitefeather, 2006 WL 763204 at *2 (distinguishing Red Bird on the ground that tribal and federal authorities were not working together "in tandem"). Regardless, Charley and its holding that "the Sixth Amendment right to counsel does not apply in tribal court criminal proceedings"[13] is not binding precedent and, to the extent that it conflicts with Red Bird and the circumstances that exist on the Rosebud Sioux Tribe Indian Reservation and in this case, need not be adhered to.

The Court is also fully cognizant of the Eighth Circuit's pronouncements in United States v. Plumman, 409 F.3d 919, 926-27 (8th Cir. 2005). Plumman is inapposite because it was not a case where the federal agent was aware of the tribal charge or aware of the defendant's representation by counsel. 409 F.3d at 926. By contrast, Carroll testified that he knew Defendant had made an appearance in tribal court with Semans and that before interviewing Defendant again, contacted an Assistant United States Attorney about a concern over a Red Bird issue. The fact that Carroll knew of the tribal charge and that Defendant had

---

[13]As stated earlier, the plain language of the Sixth Amendment prohibits the Government from infringing upon a defendant's right to counsel "in all criminal prosecutions." (emphasis added). By using the word "all" in the Amendment, the framers seemingly intended to include federal, state and tribal prosecutions, Red Bird, 146 F.Supp.2d 999, 1006, and to permit a functional approach, like that used in Red Bird and applied here, as to when and under what circumstances a defendant's Sixth Amendment right to counsel attaches in a tribal criminal case.

15

made one or more court appearances with Semans on it is a critical distinction as both Plumman and Red Bird make clear. See Plumman, 409 F.3d at 926; Red Bird, 287 F.3d at 714; compare Dupris, 422 F.Supp.2d at 1065, 1069 (the defendant did not advise the FBI agent, nor did the agent know, that the defendant had earlier appeared in tribal court for an arraignment on the same sex offense and pled not guilty to it).

## D.

For all of these reasons, the Court finds that Defendant was interviewed, on July 3rd, in violation of his Sixth Amendment right to counsel and any statements given by him in response to questioning from Carroll must be suppressed. Nevertheless, the Court finds that Defendant's statements were not the product of coercion or otherwise involuntary, compare Mincey v. Arizona, 437 U.S. 385, 398-402 (1978), and therefore are admissible at trial for impeachment purposes, see Oregon v. Hass, 420 U.S. 714, 720-24 (1975); Harris v. New York, 401 U.S. 222, 223-26 (1971); see also Michigan v. Harvey, 494 U.S. 344, 348-54 (1990) (overturning a state court ruling that because the defendant's statement after arraignment and appointment of counsel was taken "in violation of [his] Sixth Amendment right to counsel" it could not be used for impeachment purposes); Red Bird, 146 F.Supp.2d at 1003, 1009 (the defendant's statements, although elicited in violation of his Sixth Amendment right to counsel, are admissible to impeach his own trial testimony).

Defendant's statements were not extracted by threats, violence or express or implied promises sufficient to overbear his will and to critically impair his capacity for self-determination. See United States v. Lebrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc), cert. denied, 543 U.S. 1145 (2005). He was read his rights, waived them and incriminated

16

himself not once, but twice. His own taped statement strongly supports the voluntary nature of his admissions. These statements, therefore, may be used against him when and if he testifies at trial to undermine his credibility.

IV.

Based on the foregoing and in accordance with §636(b)(1), this Court concludes that:

1.     Defendant has standing to challenge the search of Black Lance's residence and the seizure of the tissues found inside the same;

2.     The search and seizure were based on valid consent given by Black Lance and were therefore lawful; and

3.     Defendant's July 3rd statements were illegally obtained in violation of his Sixth Amendment right to counsel and cannot be used by the Government at trial, except for impeachment purposes in the event he testifies.

Accordingly, the Court hereby

RECOMMENDS that Defendant's Motion to Suppress Statements and Evidence, filed at Docket No. 14, be granted in part and denied in part, as discussed herein.

Dated this 31st day of October, 2007, at Pierre, South Dakota.

**BY THE COURT:**

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

**ATTEST:**
**JOSEPH HAAS, CLERK**
**BY:**
                    **Deputy**
**(SEAL)**

17

## NOTICE

Failure to file written objections to the within and foregoing Report and Recommendations for Disposition within ten (10) days from the date of service shall bar an aggrieved party from attacking such Report and Recommendations before the assigned United States District Judge. See 28 U.S.C. § 636(b)(1).