UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR.  07-30063-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING |
| | ) | DEFENDANT'S MOTION TO |
| HOWARD D. KILLEANEY, | ) | SUPPRESS |
| | ) | |
| Defendant. | ) | |

Defendant, Howard Killeaney, is charged with two counts of aggravated sexual abuse of a child.  Docket 1.  Defendant moves to suppress the search of Michaelyn Black Lance's residence and subsequent seizure of toilet paper from the bathroom by Rosebud Sioux Tribe Officer Daniel Kettell on March 7, 2007, and the results of any testing on such evidence.  Defendant also moves to suppress the statements he made to FBI Special Agent Brian Carroll on July 3, 2007.  Docket 15.

The court referred the motions to suppress to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B).  The magistrate judge recommended that this court deny defendant's motion to suppress the search of Black Lance's residence and the seizure of toilet paper found in the bathroom.  Additionally, the magistrate judge recommended that this court grant defendant's motion to suppress the July 3, 2007, statements made to Special Agent Carroll because

defendant's Sixth Amendment right to counsel was violated at the time he made the statements to Special Agent Carroll.  As a result, the magistrate judge did not reach the merits of defendant's Fifth Amendment arguments that his July 3, 2007, statements should be suppressed because he did not voluntarily, knowingly, and intelligently waive his <u>Miranda</u> rights and he did not voluntarily make the statements.

Defendant objects to the Report and Recommendations of the magistrate judge with respect to the search of Black Lance's residence and the resulting seizure of toilet paper found in the bathroom.  Additionally, although defendant agrees with the magistrate judge's Report and Recommendations to suppress his statements made to Special Agent Carroll on July 3, 2007, defendant objects to the magistrate judge's refusal to recommend that these statements were taken following an invalid <u>Miranda</u> waiver and that the statements  were involuntary under the Fifth Amendment.  The government objects to the Report and Recommendations of the magistrate judge with respect to defendant's July 3, 2007, statements to Special Agent Carroll.

## STANDARD OF REVIEW

The court must make a de novo review "of those portions of the [Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); <u>see also</u> <u>United States v. Lothridge</u>, 324 F.3d 599, 600 (8th Cir. 2003); <u>Jones v. Pillow</u>, 47 F.3d 251, 253

(8th Cir. 1995).  When a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.; see also Fed. R. Civ. P. 72(b).  After a careful de novo review of the magistrate judge's findings and recommendations and a review of the record, the court affirms in part and reverses in part the findings and recommendations of the magistrate judge.

**FACTUAL BACKGROUND**

On July 25, 2007, an indictment was filed charging defendant with two counts of aggravated sexual abuse of a child.  The indictment charges that defendant committed the offenses on or about between February 15, 2007, and March 7, 2007, in Todd County, in Indian country, in the District of South Dakota.  During this time period, defendant lived with Black Lance and her two sons in Black Lance's rental home.  Defendant babysat Black Lance's children, one of whom is the alleged victim in this case.

On March 7, 2007, Black Lance contacted the Rosebud Sioux tribal police and reported that defendant had sexually assaulted one of her sons. Tribal Officer Kettell arrived at Black Lance's residence and knocked on the front door.  Black Lance answered the door and led Officer Kettell into the residence.  After a short conversation with the alleged victim, Officer Kettell

handcuffed defendant and removed him from the home.  Officer Kettell reentered the residence and while with Black Lance, saw a piece of toilet paper with feces on it in an upstairs bathroom trash can.  Officer Kettell did not take possession of the piece of toilet paper or any other physical evidence at that time.  Instead, Officer Kettell took defendant to tribal jail, where defendant was booked for the tribal offense of sexual contact with a minor.

On March 8, 2007, while he was in tribal custody, defendant was interviewed by FBI Special Agent Carroll and Rosebud Sioux Tribal Police Chief Charles Red Crow.  That same day, Police Chief Red Crow called Officer Kettell and requested that he pick up certain evidence at the Black Lance residence. Black Lance had called the tribal police earlier and reported that she found additional pieces of toilet paper in the same bathroom trash can that contained dried blood.  Officer Kettell asked Officer Frank Iron Heart to retrieve the evidence from the Black Lance residence.  As a result, the pieces of toilet paper were brought to the police department.

On March 9, 2007, defendant appeared in Rosebud Sioux tribal court with appointed tribal counsel, Oliver J. Seamans, of the Rosebud Sioux Public Defender's Office.  Seamans is not a law school graduate or a licensed attorney with a state bar.  He is admitted to the Rosebud Tribal bar as a lay member. Defendant pleaded not guilty to the sexual contact charge, bond was set at $2,500, and a pretrial conference was scheduled for June 4, 2007.  On

4

March 22, 2007, defendant appeared in tribal court again and Seamans orally moved for a modification of bond, which the tribal court denied.  During this proceeding, defendant entered a not guilty plea to the tribal charge for a second time.  On June 4, 2007, defendant made another tribal court appearance with Seamans, pleaded not guilty for a third time, and a jury trial was scheduled for October 23, 2007.  Seamans argued again for a modification of defendant's bond due to defendant's pretrial detainee status and the potential for him remaining in jail another four and a half months pending trial.  The tribal court modified defendant's bond so that defendant could immediately be released from custody.

Defendant was interviewed by Special Agent Carroll for a second time on July 3, 2007.  At that time, defendant was being detained at the Hughes County Jail in Pierre, South Dakota, having been arrested for an alleged state parole violation.  Before the interview, Special Agent Carroll contacted the tribal police department and asked whether defendant had made any appearances in tribal court and whether he was represented by anyone.  He was advised that defendant had made several appearances in tribal court and that he was represented by Seamans.  Subsequently, Special Agent Carroll spoke to Assistant United States Attorney Randy Seiler about whether defendant could be interviewed for a second time because of Red Bird.  Special Agent Carroll

5

advised Seiler that Seamans was not a licensed attorney.  After this conversation, Special Agent Carroll met with defendant at the county jail.

Before the interview began, Special Agent Carroll informed defendant of his rights from an Advice of Rights form.  Defendant agreed to talk to Special Agent Carroll and signed the form, acknowledging that he understood his rights and declaring that he was willing to waive them and answer questions without a lawyer present.  Defendant never mentioned that Seamans had appeared in tribal court with him and never requested that Seamans be present during the interview.  During the interview, defendant made inculpatory statements, admitting that he had digitally penetrated the victim's anus the night of March 6, 2007.  Defendant also provided a taped summary statement at the end of the interview after being advised of his rights and waiving them for a second time.

On July 25, 2007, a two-count federal indictment was filed, charging defendant with aggravated sexual abuse of a child.  Defendant has pleaded not guilty to the charges, and a jury trial is scheduled to begin on January 22, 2008.

## DISCUSSION

### I.    Search of Black Lance's Residence

Defendant moves to suppress evidence obtained during a search of Black Lance's residence on March 7, 2007.  Defendant argues that the officer did not

obtain voluntary consent to search Black Lance's residence and that the toilet paper seized from the bathroom was unconstitutionally taken under the Fourth Amendment.

The magistrate judge determined that defendant had standing to challenge the search of Black Lance's residence and the subsequent seizure of the toilet paper from the bathroom because defendant's status as an invited guest who had spent several nights at the home provided defendant with a reasonable expectation of privacy under the Fourth Amendment.  The Magistrate Judge further determined that the evidence presented at the motion hearing, including Black Lance's own testimony, provided sufficient support that Black Lance consented to a search of her rental residence.  Black Lance invited the officer into her residence and gave him permission to look around inside her residence.  The magistrate judge found that these facts coupled with Black Lance's ownership of and authority over the residence evidenced that the officer's search of the residence and seizure of the toilet paper was permissible under the Fourth Amendment.  The magistrate judge further found that even if Black Lance lacked the authority to consent to the search, under the circumstances, a prudent officer would have reasonably believed that the consent to enter the residence and search for evidence was valid.

The court has conducted a de novo review of the Report and Recommendations issued by the magistrate judge, pursuant to 28 U.S.C.

7

§ 636(b)(1).  After reviewing the facts and the law as it relates to this case, as well as the objections made by defendant, the court adopts the Report and Recommendations issued by the magistrate judge with respect to the search of Black Lance's residence in its entirety.  Accordingly, defendant's motion to suppress the fruits of the search of Black Lance's residence is denied.

## II.    Defendant's July 3, 2007, Statements

Defendant moves to suppress the statements he made to Special Agent Carroll on July 3, 2007.  Defendant argues that his Sixth Amendment right to counsel was violated, he did not voluntarily, knowingly, and intelligently waive his Miranda rights, and his statements were not voluntary under the Fifth Amendment.

The magistrate judge recommended that the statements defendant made to Special Agent Carroll should be suppressed because Special Agent Carroll violated defendant's Sixth Amendment right to counsel.  More specifically, the magistrate judge determined that the tribal charge and the federal charge were the same offense for purposes of the Sixth Amendment, and that defendant's Sixth Amendment right to counsel attached when he appeared in tribal court for arraignment with Rosebud Sioux Tribal Public Defender, Seamans.  The magistrate judge did not reach the merits of defendant's arguments regarding waiver of Miranda rights and involuntariness under the Fifth Amendment.

8

**A.    Sixth Amendment Right to Counsel**

**1.    Same Offense**

The court agrees with the magistrate judge's proposed findings that the tribal and federal criminal complaints charge the same offense.  The Eighth Circuit has determined that " 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' "  United States v. Red Bird, 287 F.3d 709, 715 (8th Cir. 2002) (quoting Texas v. Cobb, 532 U.S. 162, 173, 121 S. Ct. 1335, 149 L. Ed. 2d 321 (2001)).  In this case, the tribal charge of sexual contact has the same essential elements as the aggravated sexual abuse of a child charge in federal court.  Furthermore, at the motion hearing, Special Agent Carroll testified that the tribal and federal charges were identical.  Report and Recommendations, Docket 28, at 9 n.3.  Therefore, the court finds that based upon Eighth Circuit precedent, the tribal and federal charges encompass the same offense for Sixth Amendment purposes.[1]

_____

[1] The court notes the circuits are split as to whether the dual sovereign doctrine should apply in the Sixth Amendment right to counsel context.  Of the circuits that have addressed the issue, three have applied the doctrine to the Sixth Amendment, two have declined to, and one chose not to address the issue.  See United States v. Alvarado, 440 F.3d 191, 194 (4th Cir. 2006) (holding that "federal and state crimes are necessarily separate offenses for the purposes of the Sixth Amendment, because they originate from autonomous sovereigns that each have the authority to define and prosecute criminal conduct"); United States v. Coker, 433 F.3d 39, 44 (1st Cir. 2005) (stating that "the dual sovereignty doctrine applies for the purpose of defining what constitutes the

## 2.    Attachment of Right to Counsel

The government argues that defendant's Sixth Amendment right to

counsel did not attach when defendant was arraigned in tribal court because

defendant was not represented by a licensed professional attorney at that

proceeding and therefore, defendant's Sixth Amendment right was not violated

when Special Agent Carroll interviewed defendant on July 3, 2007.  Defendant

responds that his Sixth Amendment right to counsel did attach when he

appeared in tribal court with an employee of the Tribal Public Defender Office,

---

same offense in the Sixth Amendment right to counsel context"); United States
v. Avants, 278 F.3d 510, 517 (5th Cir. 2002) (stating "[i]t is plain to see that the
federal and state murder prosecutions against Avants are not the 'same offense'
under the Sixth Amendment because each was initiated by a separate
sovereign"); United States v. Mills, 412 F.3d 325, 327 (2d Cir. 2005) (stating
"the Sixth Amendment right of counsel extends to offenses considered to be the
'same offense' as those to which the right has already attached even when they
are prosecuted by different sovereigns"); United States v. Red Bird, 287 F.3d
709, 715 (8th Cir. 2002) (stating "the federal and tribal complaints charge the
same offense for Sixth Amendment purposes"); and United States v. Krueger,
415 F.3d 766, 768 (7th Cir. 2005) (determining that it did not have to reach the
issue because the case could be decided on other grounds).  See also Charles
Morrison, The Supreme Court May Have Meant What It Said, But It Needs To
Say More: A Comment on The Circuit Split Regarding the Application of the
Dual Sovereignty Doctrine To the Sixth Amendment Right to Counsel, 39 U. Tol.
L. Rev. 153, 183-84 (2007) (arguing that the dual sovereignty doctrine should be
applied to the Sixth Amendment because there are considerations related to
connecting the federal government's prosecutorial efforts to the quality of a
state's previous investigation and courts should respect the United States
Supreme Court's adherence to the multi-sovereign nature of the Constitution as
well as its belief that the Fifth and Sixth Amendment rights to counsel are
designed to serve different purposes).  The United States Supreme Court has
recognized tribes as a separate sovereign in the context of application of the
Double Jeopardy Clause.  United States v. Lara, 541 U.S. 193, 210, 124 S. Ct.
1628, 1639, 158 L. Ed. 2d 420 (2004).

who was licensed to practice before the tribal court, and consequently his Sixth Amendment right to counsel was violated when Special Agent Carroll interviewed him on July 3, 2007.  Thus, the issue presented to the court is whether a tribal public defender, who is not a licensed professional attorney but is allowed to appear in tribal court, is "counsel" within the meaning of the Sixth Amendment.

The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." "Whatever else it may mean, the right to counsel . . . means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " Red Bird, 287 F.3d at 713 (quoting Brewer v. Williams, 430 U.S. 387, 389, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)).  Under the Sixth Amendment, the accused has the right to depend on counsel to act as a medium between him and governmental authorities.  Maine v. Moulton, 474 U.S. 159, 176, 106 S. Ct. 477, 88 L. Ed. 2d 481 (1985).

The Sixth Amendment right to counsel attaches at the commencement of adversarial proceedings against a defendant.  Kirby v. Illinois, 406 U.S. 682, 688, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972).  "Any statement about the charged crime that government agents deliberately elicit from a defendant

without counsel present after the defendant has been indicted must be suppressed under the Sixth Amendment exclusionary rule." Red Bird, 287 F.3d at 713 (citing Massiah v. United States, 377 U.S. 201, 207, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964)).  In fact, after a formal accusation has been made and the individual becomes an "accused" rather than just a "suspect" under the Sixth Amendment, "the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation." Red Bird, 287 F.3d at 714 (citing Michigan v. Jackson, 475 U.S. 625, 632, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986)).  But if the right to counsel has not attached, it is not a violation of defendant's Sixth Amendment right to counsel to interview him without counsel present if proper precautions are taken.  See United States v. Edelmann, 458 F.3d 791, 804 (8th Cir. 2006) (stating "if the right to counsel has not attached, the defendant has no right to the effective assistance of counsel").

There is a clear distinction between licensed legal counsel and lay representation under the Sixth Amendment.  See Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988) (stating "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects . . . [r]egardless of his persuasive powers, an advocate who

12

is not a member of the bar may not represent clients . . . in court.").  The

United States Supreme Court did not extend the Sixth Amendment to

encompass the right to be represented before the bar of a court by a layman.

Id.  Additionally, every circuit which has considered the question, including the

Eighth Circuit, has held there is no right to representation by persons who are

not qualified attorneys.  See Pilla v. American Bar Ass'n, 542 F.2d 56, 58-59

(8th Cir. 1976) (affirming the district court opinion which determined that

individuals in civil and criminal cases do not have a constitutional right to be

represented by lay counsel).  See also United States v. Anderson, 577 F.2d 258,

261 (5th Cir. 1978) (stating "[t]here is no sixth amendment right to be

represented by a non-attorney"); United States v. Scott, 521 F.2d 1188, 1191-

92 (9th Cir. 1975) (determining that the word "counsel" in the Sixth Amendment

guaranteeing an accused the right to have the assistance of counsel for his

defense does not include friends or advisors of an accused who declines an

attorney and represents himself); United States v. Grismore, 546 F.2d 844, 847

(10th Cir. 1976) (stating " '[c]ounsel' as referred to in the Sixth Amendment does

not include a lay person, rather 'counsel' refers to a person authorized to the

practice of law"); and United States v. Jordan, 508 F.2d 750, 753 (7th Cir. 1975)

13

(stating "[t]he district court is not obligated to appoint counsel of defendant's choice where the chosen attorney is not admitted to practice").[2]

Several cases have addressed when a defendant's Sixth Amendment right to counsel attaches in relation to tribal court proceedings.   In United States v. Red Bird, 287 F.3d 709 (8th Cir. 2002), the Eighth Circuit determined that the defendant's Sixth Amendment right to counsel attached when he appeared in tribal court with a licensed attorney.  In Red Bird, the defendant had been charged with rape, arraigned on that charge, and was assigned a licensed

_____

[2]Additionally, several courts have determined that representation by an individual who is not a licensed attorney is a per se violation of the Sixth Amendment right to effective counsel.  See United States v. O'Neil, 118 F.3d 65, 70-71 (2d Cir. 1997) (stating that it is a per se violation of the Sixth Amendment "where the attorney was not licensed to practice law because he failed to satisfy the substantive requirements of admission to the bar"); United States v. Mouzin, 785 F.2d 682, 697 (9th Cir. 1986) (stating that an individual who had never been admitted to practice law and thus "who never acquired the threshold qualification to represent a client in court cannot be allowed to do so, and no matter how spectacular a performance may ensue, it will not constitute 'effective representation of counsel' for purposes of the Sixth Amendment"); Solina v. United States, 709 F.2d 160, 168-69 (2d Cir. 1983) (finding the graduate of an accredited law school who had failed the New York bar examination twice and had not been admitted to any other bar provided ineffective counsel under the Sixth Amendment); United States v. Myles, 10 F. Supp. 2d 31, 35 (D.D.C. 1998) (noting the "per se rule [under the Sixth Amendment] applies where the defendant is represented by an individual who has never been admitted to any court's bar"); and United States v. Dumas, 796 F. Supp. 42, 46 (D. Mass. 1992) (determining that "if a defendant is convicted while represented by someone *who has never been admitted to any court's bar*, that defendant is deemed to have been denied counsel as a matter of law"). Thus, if this court found the appointment of lay counsel to trigger the protections afforded by the appointment of "counsel" within the meaning of the Sixth Amendment, it would be fundamentally inconsistent with the general rule that an individual must be a licensed professional attorney before he can be considered effective counsel under the Sixth Amendment.

attorney to represent him in tribal court.  Subsequently an FBI agent, with the assistance of a tribal investigator, located the defendant and initiated an interview with him regarding the rape allegation.  The defendant was then charged in federal court with sexual abuse based on the same facts underlying the rape charge in tribal court.  The district court suppressed the defendant's statement, concluding that his right to counsel had attached and had been invoked when he was arraigned on the rape charge in tribal court.  United States v. Red Bird, 146 F. Supp. 2d 993, 1008 (D.S.D. 2001).

The Eighth Circuit rejected the government's contention that Red Bird's Sixth Amendment right did not attach because the federal sexual abuse charge was not the same charge as the rape charge in tribal court for double jeopardy purposes.  Red Bird, 287 F.3d at 715-16.  The Eighth Circuit reached this conclusion after considering the evidence that the tribal charge had triggered the federal inquiry, tribal authorities had "worked in tandem" with the FBI to investigate the rape, the elements of the tribal and federal charges were essentially the same, and tribal sovereignty was unique and limited in nature. Id. at 714-15.  The court found that it was not dispositive that the two charges were brought by different sovereigns.  Id. at 714-15.  Most importantly, the Eighth Circuit determined that the tribal arraignment was an adversarial judicial proceeding in which the tribe "provide[d] a licensed attorney to represent indigent defendants in tribal court."  Id. at 716.  It concluded that

15

because the defendant's right to counsel had attached and had been invoked in the tribal proceeding, the FBI was precluded from instigating a discussion with him in the absence of his counsel.  Id. at 716-17.

It is significant that in Red Bird the Eighth Circuit recognized that "[a]t the time Red Bird was interviewed, he had been indicted and had been appointed an attorney who was licensed to serve him in both tribal and federal court."  287 F.3d at 714.  That is not the case here.  In the present case, defendant was assigned lay counsel who is not licensed to practice law and therefore, could only serve him in tribal court and not federal court.   As previously discussed, for purposes of the Sixth Amendment, lay counsel is not considered "counsel" under the Sixth Amendment.  See Wheat, 486 U.S. at 159.  Accordingly, the fact that defendant was not appointed a licensed attorney distinguishes this case from the facts in Red Bird.

Furthermore, the Eighth Circuit in Red Bird relied heavily on the fact that the Rosebud Sioux Tribal Constitution guaranteed a defendant the right to be represented by an attorney.  Id. at 713.  It is important to closely analyze this right, however.  The Rosebud Sioux Tribal Constitution states: "Any Indian accused of any offense shall have the right to assistance of counsel and to demand trial by jury."  Rosebud Sioux Tribal Const. Amend. XI, Article X, Section 2.  The Rosebud Sioux Tribe Law and Order Code clarifies this right by providing that "[e]very person appearing as a party in any judicial procedure

16

before a Tribal court shall have the right to be represented either by **lay counsel** or professional attorneys and have such **counsel** and attorneys assist in the preparation and presentation of his case.  The Rosebud Sioux Tribe shall have no obligation to provide or pay for such **lay counsel** or professional attorneys and only those persons who have first obtained admission to practice before the Tribal Courts shall appear therein."  Rosebud Sioux Code, Title 9, Chapter 2 (emphasis added).  In contrast, the Sixth Amendment of the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  Thus, contrary to the conclusion in Red Bird, the evidence presented before the court in the present case indicates that the term "counsel" in the Rosebud Sioux Tribal Constitution includes both lay counsel and professional attorneys and does not obligate the tribe to provide indigent defendants with free legal services.  Thus, the right to be represented by an attorney in the Rosebud Sioux tribal court is not identical to the right to be represented by an attorney under the Sixth Amendment in federal proceedings.  Therefore, the appointment of "counsel" pursuant to the Rosebud Constitution does not in all circumstances cause Sixth Amendment protections to attach.

The most recent and analogous case that has been decided in this district is United States v. Dupris, 422 F. Supp. 2d 1061, 1068 (D.S.D. 2006), in which the court determined the defendant's Sixth Amendment right to

counsel did not attach when the defendant was arraigned in tribal court on the Cheyenne River Indian Reservation and pleaded not guilty with the assistance of lay counsel.  In that case, the government argued that the individual who appeared with the defendant in tribal court was not law trained and was not a licensed attorney in any federal or state court and therefore, was not "counsel" for purposes of the Sixth Amendment.  The defendant argued that despite the individual's educational shortcomings, she was sufficiently skilled to provide the defendant with the legal assistance required to protect his rights and thus, was his "counsel."  Id. at 1068.  The court determined that the "[d]efendant's Sixth Amendment right to counsel was not triggered until he made his initial appearance in federal court."  Id.  The court further explained that "[s]tated another way, [d]efendant's right to counsel did not attach because he never appeared in tribal court with 'counsel' or a 'lawyer' prior to the . . . interrogation."  Id.

The court concluded that "[a]lthough Defendant had been arraigned in tribal court and appeared with lay counsel there, this proceeding did not serve to trigger his right to counsel under the Sixth Amendment."  Id. at 1069.  The court further stated "[i]nasmuch as Defendant's Sixth Amendment right to counsel did not attach until his initial appearance in federal court, that right was not violated when [Special Agent] Trone questioned him without the presence of counsel."  Id. at 1070.  As in Dupris, in the present case, defendant

18

was arraigned in tribal court and appeared with lay counsel, and therefore, defendant's Sixth Amendment right to counsel did not attach when defendant appeared in tribal court.[3]  Thus, defendant was never represented by "counsel" under the Sixth Amendment in the tribal court proceedings.

Further, the present case is similar to United States v. Whitefeather, 2006 WL 763204 (D. Minn. 2006).  In that case, the United States District Court for the District of Minnesota determined that the defendant's arraignment in tribal court, in which he was assisted by a lay advocate, did not trigger the protections of the defendant's Sixth Amendment right to counsel and, thus, the interrogation of the defendant without his counsel present did not violate his Sixth Amendment rights.  Id. at *2-3.  In reaching its conclusion, the court noted that Red Bird and United States v. Swift Hawk, 125

---

[3] The magistrate judge noted in his Report and Recommendations that in United States v. Eastman, 256 F. Supp. 2d 1012 (D.S.D. 2003), a court in this district determined lay counsel was sufficient to trigger Fifth Amendment rights. But in that case the court stated that, "[i]t is not clear whether a person who is admitted to practice law in tribal court, but not elsewhere, is a 'lawyer' within the meaning of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)." Eastman, 256 F. Supp. 2d at 1017.  The court explained that the Cheyenne River Sioux Tribe (CRST) public defender "is not admitted to practice law in any state or federal courts in South Dakota." Id.  The court further noted "[i]t would appear that the public defender for CRST is in a position to provide the type of legal assistance necessary to protect the Fifth Amendment rights of an accused undergoing custodial interrogation that a lawyer can offer." Id.  But the court determined it "need not decide this thorny issue . . . because even assuming that the tribal public defender referred to in [the defendant's] statement was a 'lawyer' for purposes of Miranda, the statement was not an actual request for counsel, but rather, nothing more than an indication that he might want a lawyer." Id.

F. Supp. 2d 384, 388-89 (D.S.D. 2000), were distinguishable based on the fact that the Rosebud Sioux Tribal Constitution was unique among Indian tribes because it " 'guarantees the right to be represented by an attorney, and the tribe provides indigent defendants with a licensed attorney from the tribal public defender's office.' " Id. at *1 (citing Red Bird, 287 F.3d at 713). The court noted that there was no evidence that the Red Lake Tribe, which was the tribe involved in that case, "has a constitution that contains a provision for the appointment of counsel for indigent defendants, at the expense of the Tribe, similar to that of the Rosebud Sioux Tribe Constitution." Id. at *2. The court also noted that unlike Red Bird, the defendant was appointed a "lay advocate" as opposed to a licensed lawyer. The court further emphasized that the tribal and federal authorities were not working "in tandem" as they were in Red Bird. Similar to Whitefeather, in the present case, defendant appeared in tribal court with a lay advocate and as a result, his Sixth Amendment right to counsel did not attach because he had not appeared in an adversarial proceeding with "counsel."

This conclusion is consistent with that of the Ninth Circuit Court of Appeals which has concluded on two occasions that a tribal court arraignment is irrelevant in determining when a defendant's Sixth Amendment right to counsel attached. See United States v. Charley, 396 F.3d 1074, 1082 (9th Cir. 2005) (Sixth Amendment right to counsel is not triggered until defendant's

initial appearance in federal court); <u>United States v. Percy</u>, 250 F.3d 720, 725 (9th Cir. 2001) (Sixth Amendment right to counsel does not apply to tribal court criminal proceedings).

The court finds that the word "counsel" as used in the Sixth Amendment means a licensed professional attorney and not lay counsel. As such, defendant's Sixth Amendment right to counsel had not attached when Special Agent Carroll interviewed defendant on July 3, 2007. Therefore, defendant's Sixth Amendment right to counsel was not violated.

**B.   Waiver of <u>Miranda</u>**

Defendant argues that his background and mental deficiencies weigh against a voluntary, knowing, and intelligent waiver of his <u>Miranda</u> rights. Thus, defendant objects to the magistrate judge's Report and Recommendations because of the magistrate judge's refusal to find an invalid wavier of <u>Miranda</u>.

"A waiver [of <u>Miranda</u> rights] is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception." <u>Thai v. Mapes</u>, 412 F.3d 970, 977 (8th Cir. 2005). To determine whether a waiver is voluntary, a court looks at the totality of the circumstances and must

determine whether the individual's will was overborne.  United States v.
Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989).  A court must examine both "the
conduct of the law enforcement officials and the capacity of the suspect to
resist pressure to confess."  United States v. McClinton, 982 F.2d 278, 282 (8th
Cir. 1992).

The court finds that defendant knowingly, voluntarily, and intelligently
waived his Miranda rights in relation to his July 3, 2007, interview with Special
Agent Carroll based on the totality of the circumstances.  Special Agent Carroll
testified that before the July 3, 2007, interview, he told defendant that he was
in custody on state charges of his parole violation, that he was not going to be
arrested during the interview or at the conclusion of the interview on any
additional charges, and that the interview was strictly voluntary.  Mtn. Hrg.
Transcript 47.  Subsequently, Special Agent Carroll gave defendant a FD-395
Advice of Rights form.  Special Agent Carroll testified he read the form verbatim
to defendant and asked defendant whether he understood each right, whether
he was willing to waive each right, and whether he wanted to invoke any of the
rights.  Special Agent Carroll further testified that he went over the waiver with
defendant and asked if defendant would like to sign the form and answer
questions at that time.  Mtn. Hrg. Transcript. 38-39, 48.  Defendant indicated
he would speak to Special Agent Carroll and signed and dated the form.  Mtn.
Hrg. Transcript. 48.  Further, at the end of the interview, defendant provided a

taped summary statement after being advised of his rights and waiving them for a second time.  Mtn. Hrg. Transcript 50.

The only evidence that was presented by defendant in regard to his mental capacity and the effect that had on his <u>Miranda</u> waiver was school records and the testimony of Lisa Bohannan, defendant's special education teacher.  Mtn. Hrg. Transcript 71.  Bohannan testified she taught defendant for four years and during that time, she saw him on a daily basis.  Mtn. Hrg. Transcript  72, 77.  Bohannan also testified that defendant was a special education student from Grades 1 through 12 and that in her opinion, when she taught him, he performed at a third to fifth grade level.  Mtn. Hrg. Transcript 73.  But she also testified that she has not spoken with or seen defendant since 2002.  Mtn. Hrg. Transcript 79.  Additionally, she acknowledged that in a psychological evaluation performed by a professional, defendant obtained a verbal IQ score of 80, a performance IQ score of 72 with a full scale IQ of 74, which falls into the borderline range of intellectual ability.  Mtn. Hrg. Transcript 75.  Based on the totality of the circumstances, the court finds that defendant knowingly, voluntarily, and intelligently waived his <u>Miranda</u> rights before speaking to Special Agent Carroll on July 3, 2007.

**C.    Voluntariness of Statements**

Defendant also argues that the manner in which Special Agent Carroll questioned him as well as his mental deficiencies support his contention that

23

the statements he made on July 3, 2007, were not voluntarily made.  "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. Garlewicz, 493 F.3d 933, 935-36 (8th Cir. 2007).  Such coercion may be mental as well as physical.  "The appropriate test for determining the voluntariness of a confession is whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will." United States v. Kime, 99 F.3d 870, 879 (8th Cir. 1996) (quoting United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990)).

The court finds that based upon the totality of circumstances, defendant voluntarily made statements to Special Agent Carroll on July 3, 2007.  Special Agent Carroll testified that during the interview with defendant, he told defendant that there had been some type of sexual assault that happened to the child and defendant responded by telling Special Agent Carroll what he had done.  Mtn. Hrg. Transcript 59.  Although Special Agent Carroll told defendant that he did not believe defendant's previous statement that he did not do anything to the child, he told defendant that he should tell the truth and the truth is what he wanted to hear.  Mtn. Hrg. Transcript 60-61.  Defendant ultimately stated that he accidentally touched the child and Special Agent Carroll told defendant that he could make no promises and that his statements

24

would be turned over to an Assistant United States Attorney.  Mtn. Hrg.
Transcript  68.  Special Agent Carroll's manner of interviewing defendant
coupled with defendant's mental deficiencies does not support a finding that
defendant's will was overborne or that his self-determination was critically
impaired.  Accordingly, based on the evidence submitted during the motion
hearing, the court finds that defendant voluntarily made statements to Special
Agent Carroll on July 3, 2007, and those statements are admissible for all
purposes.

Accordingly, it is hereby

ORDERED that the order of the magistrate judge (Docket 28) is affirmed
in part, and reversed in part, as set forth in this opinion.  Defendant's motion
to suppress is denied.

Dated December 17, 2007.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE